GEORGE H. McNEIL et al., Appellees, v. FARMERS CREDIT COMPANY of Ottumwa, Appellant, et al.

No. 42727.

MARCH 12, 1935.

REHEARING DENIED JUNE 21, 1935.

John F. Webber and Goodykoontz & Goodykoontz, for appellant.

Mahoney & Mackey and L. R. Johnson, for appellees.

MITCHELL, J.—George H McNeil for almost fifty years has been a farmer in Boone county, and was the owner of 575 acres of land in Boone county, on which he had resided. In 1932, like a great many farmers in Iowa, his farm was foreclosed upon, and while he lost title to the land he did not lose possession, as the company rented the farm to McNeil. In the fall of 1932 McNeil wrote the Bankers Life Company, his landlord, describing the excellent condition of his crop, stating that he wanted to feed some lambs. The representative of the company, after talking with McNeil, called a Mr. Gooding, who at that time lived in Ottumwa, and advised Gooding that McNeil was desirous of buying some sheep. Gooding, in pursuance of that conversation, contacted McNeil and told him he could arrange for sheep and for a loan on the sheep, and that he had done a lot of business through the Ottumwa Livestock Company, who had obtained loans through Mr. Beck of the Farmers Credit Company of Ottumwa; that he thought McNeil should have 2,500 head of sheep for the feed he had on hand.·

On or about the second week in September, 1932, McNeil and Gooding went to Ottumwa and arranged to buy from the Ottumwa Livestock Company 2,500 head of wethers. McNeil gave his note for $700 and signed a contract for the purchase of the wethers.

On or about the 9th day of October, 1932, McNeil made a second trip to Ottumwa. The Ottumwa Livestock Company advised him they could not get the wethers as they were too heavy, and the contract was changed from wethers to lambs. The price agreed upon was 5 cents per pound, laid down at Boone, Iowa, for range lambs, which were to weigh sixty-five to sixty-eight pounds. McNeil and Gooding then went to the office of the Farmers Credit Company of

Ottumwa and had a conversation with Mr. Beck, an officer of that company. It was agreed with Beck that the lambs were being purchased on a basis of 5 cents per pound and were to weigh around sixty-eight pounds. McNeil executed and delivered his note for $8,500 to the Farmers Credit Company, said note reciting that it was for the purchase of sheep. Gooding went to Kansas City and selected the sheep. He purchased in all 2,128 head of sheep and started them on their way from Kansas City to Boone. Gooding then telephoned McNeil and told him the sheep would arrive at 4 a. m. on October 18, 1932. McNeil requested that the sheep be shipped over the Northwestern Railroad, as the Milwaukee Railroad did not have any stockyards or any scales. The sheep arrived at the scheduled time, at 4 a. m. McNeil and Gooding were there to greet them. But, instead of coming in over the Northwestern Railroad they came over the Milwaukee. They came in seven cars, purported to be billed from points in Arizona. There was no opportunity for McNeil to inspect the sheep or weigh them; all he could do was to look at them through the slats in the cars at the early hour they arrived. The sheep were unloaded and taken to McNeil's farm. On the morning of the 19th of October, the day after the sheep arrived at Boone, but before McNeil arrived at Ottumwa, the Farmers Credit Company paid a sight draft drawn by the Patterson Company of Kansas City on the Farmers Credit Company for $7,253.50, for 2,128 sheep shipped to Boone, Iowa. Later in the same day McNeil and Gooding arrived at Ottumwa and went to the office of the Farmers Credit Company. McNeil asked Beck about the weights of the sheep. There is some dispute in the record as to exactly what he did ask for, but it is clear that he was trying to ascertain the weight of the sheep that he had received. Beck did not have the weights; said they had been sent to the Intermediate Credit Bank, but did give to McNeil a memorandum, marked in the case as Exhibit "I". This memorandum was made by Gooding at Kansas City and was given to Beck by Gooding. McNeil and his wife then gave to the Farmers Credit Company a mortgage, which included the aggregate purported purchase price of the sheep, $7,253.57, and added $218 on account of the hogs which were then put into the mortgage. McNeil was paid the $218 on condition that he would pay to Gooding his commission of 10 cents a head on the sheep. They then figured interest on the loan for the estimated feeding time and made the mortgage for $7,695, the interest being

charged in advance. There was returned to McNeil the first note of $8,500 which he had given to the Farmers Credit Company. McNeil and his wife then returned to the farm in Boone county, where for the next few months we find McNeil feeding to these sheep the crop which he had produced on this large farm. He fed them his entire crop, except what was required to feed his hogs and a few cattle and horses he had. He worked with the sheep from the 18th of October, when he received them, until the 28th of February, when he shipped them. During this period of time over a hundred of them died. He shipped to Chicago 2,014 of these sheep, and the 2,014 shipped weighed exactly the same as the amount that McNeil was charged for the 2,128 when they arrived at his farm, namely, 145,070 pounds. The amount of money which was received from the sale of the sheep in Chicago, and from the sale of the hogs which were covered by the chattel mortgage, when applied upon the mortgage which McNeil had given to the Farmers Credit Company of Ottumwa, left a balance due by McNeil to the company of $1,013.52. In other words, McNeil through his experience of feeding sheep had lost not only his work, his labor, his crop, but in addition thereto, he had lost over a thousand dollars in the sheep deal.

On the 8th day of May, 1933, George H. McNeil and Grace B. McNeil commenced an action against the Farmers Credit Company of Ottumwa and Olive P. Myers, county recorder of Boone county, Iowa, entitled, "Petition at Law," in which they prayed for judgment against the defendants and each of them for the mortgage which had been executed by the McNeils to the Farmers Credit Company. Subsequent to that time the Farmers Credit Company commenced foreclosure proceedings under chapter 523 of the 1931 Code of Iowa, entitled "Farmers Credit Company vs. George H. McNeil and Grace B. McNeil," and these proceedings were instituted before C. F. Jipp, one of the constables in and for Boone county, Iowa. On June 10, 1933, George H. McNeil and his wife commenced a suit in equity against the Farmers Credit Company and C. F. Jipp, in which they prayed that the foreclosure proceeding, being foreclosure proceeding instituted by the Farmers Credit Company through C. F. Jipp, the constable, be transferred to the district court of Boone county, Iowa, and that an injunction issue without bond, restraining the defendants and each of them from proceeding with the foreclosure of said mortgage, and that upon final hearing said injunction be made permanent.

The defendants in this action filed a resistance, and a hearing was held before Hon. H. E. Fry, one of the judges of the Eleventh judicial district of Iowa, and an order was entered, directing that the foreclosure proceeding which had been commenced under chapter 523 of the 1931 Code of Iowa, wherein Farmers Credit Company of Ottumwa, Iowa, was the mortgagee, and George H. McNeil and Grace B. McNeil, the plaintiffs herein, were the mortgagors, and wherein C. F. Jipp had been acting as agent for said mortgagee, be transferred to the district court of Iowa in and for Boone county, to be tried by equitable proceedings. In compliance with the order of court made, the Farmers Credit Company filed a petition of foreclosure of chattel mortgage in the district court of Boone county, Iowa, wherein they prayed for judgment against George H. McNeil and Grace B. McNeil in the amount of $1,013.52, the balance due upon said chattel mortgage, with interest thereon at the rate of 8 per cent from March, 1933, and the costs of the action, and for foreclosure of their mortgage and for special execution for the sale of the said mortgaged property. To this petition the McNeils filed answer and cross-bill, denying that the Farmers Credit Company was entitled to the relief prayed for, setting up by way of counterclaim a claim against the Farmers Credit Company in the amount of $4,000. The Farmers Credit Company then filed a motion to strike, which was overruled, and then a reply. The pleadings in this case cover sixty-five pages of the abstract. The case proceeded to trial. Considerable evidence was introduced on both sides, and the lower court entered a judgment and decree in favor of George H. McNeil and against the Farmers Credit Company of Ottumwa, Iowa, canceling the note and chattel mortgage declared upon, and entered judgment for McNeil and against the Farmers Credit Company in the amount of $211.41, with interest at 6 per cent and the costs of this action.

Needless to say, the Farmers Credit Company was not satisfied with the judgment entry and has appealed to this court.

McNeil was a farmer. He knew little about the sheep business. But, like a great many farmers in Iowa, he believed there was money to be made in sheep. He had the farm and he had the feed. He went to Ottumwa with a representative of the Bankers Life Company, who was McNeil's landlord, and there conferred with a live stock company that was in the business of selling sheep. He agreed to purchase a certain number of sheep and gave his note in the

amount of $700. On a later visit he was taken to the office of the Farmers Credit Company and at that time he executed a note to the Farmers Credit Company in the amount of $8,500, which recited that it was for the purchase of sheep. Gooding went to Kansas City and purchased the lambs, which were to be of a certain weight —an average of around sixty-five pounds. This seems to be a very important matter—the weight, for a sixty-five pound lamb is worth 5 cents a pound, whereas a fifty to fifty-five pound lamb is only worth $3\frac{1}{2}$ cents per pound. Gooding bought the lambs in Kansas City and then telephoned to McNeil, who instructed him to ship them from Des Moines to Boone over the Northwestern Railroad so that they might be weighed when they arrived at Boone. For some reason not explained in the record the sheep were not shipped over the Northwestern, but arrived on the Milwaukee. They arrived at the hour of 4 in the morning. There was no opportunity to inspect or to weigh them. McNeil was confronted with seven carloads of sheep. There was nothing to do but to unload them, and he did unload them and took them to his farm. On the next day, with Gooding, he drove to Ottumwa.

It is important to keep in mind that before McNeil had started for Ottumwa the Farmers Credit Company paid the full amount of the invoice of the shipment, to the Patterson Company at Kansas City, and that this was paid without McNeil's knowledge or consent. When McNeil arrived at Ottumwa that afternoon, he asked about the weights. There is some dispute in the record as to just what he said. But there can be no question that he was trying to ascertain what the shipment he received weighed. No one had the weights. Beck of the Farmers Credit Company had an invoice, but no one claims that was the actual weight of the shipment which McNeil received.

In reading this record no one can come to any other conclusion, it seems to us, but that McNeil did not receive the sheep he thought he was buying; that the sheep weighed anywhere from ten to twelve pounds less per head than they were supposed to weigh. And this is all-important, for, it is agreed, a sixty-five pound lamb was worth 5 cents per pound, whereas a fifty-five pound lamb was worth only $3\frac{1}{2}$ cents per pound. But the Farmers Credit Company say: "We are not responsible for the fact that McNeil did not receive what he bought. We were just loaning the money to McNeil." And yet this same company paid for this shipment before they knew what

the weights of the sheep were and before McNeil knew. The Farmers Credit Company knew they were to be sixty-five pound lambs and that McNeil was to pay at the rate of 5 cents per pound. They knew that they were to be range lambs and not southern lambs. And yet, knowing these things, and knowing the importance of these items—for the Farmers Credit Company specialized in loaning money upon sheep—without any authority from McNeil, without any word from him that the sheep had been received, without consulting McNeil in any way in regard to whether or not he was satisfied, whether he had had an opportunity to ascertain that the sheep were the weight and kind he had purchased, paid to the Patterson Company the full amount of the invoice. And when McNeil arrived to give the mortgage upon the sheep and his other personal property—for in the mortgage now sought to be foreclosed were included not only the sheep purchased but all of the personal property of McNeil, including his hogs, cows, horses and other items— the Farmers Credit Company had already paid for the sheep. And when McNeil asked about the weights, all that the company said to him was: "Well, the weights will be furnished later on." McNeil was never furnished any weights.

When the Farmers Credit Company paid the invoice sent to them by the Patterson Company, without any word from McNeil, they assumed certain legal relations with McNeil, whether they intended to do so or not. They were paying out McNeil's money for these sheep and in the payment of this money they were his agents. They could have awaited McNeil's directions, and of course he would be bound by what he authorized them to do. Or, they could do as they did do and pay for the sheep without his knowledge or consent. But, when they did that and it turned out the weights were incorrect, they are responsible to McNeil. An agent must make a full and fair disclosure of the facts. McNeil asked for the actual weight of the sheep and was told that the weights went to the Intermediate Credit Bank. An agent is responsible for paying out his principal's money without special authority unless the contract is fulfilled. The Farmers Credit Company accepted the statement of account and paid McNeil's money. It was paying McNeil's money without verifying the weight, which in this case was all-important because light lambs were so much cheaper. The Farmers Credit Company, due to the negligence which it exercised in expending McNeil's money, are now liable to him for the wrongful expendi-

ture of same. McNeil did not receive what he contracted for. McNeil has fed his crop, consisting of almost four thousand bushels of corn, hay and other feed; he performed the labor necessary in taking care of these sheep during the months they were at his farm. And, while his claim for damages is considerably more than the lower court allowed him, a careful reading of the record convinces us that the lower court was right in the amount which was allowed.

Motion to strike the appellee's brief and argument, which was submitted with the case, is hereby overruled.

Judgment and decree of the lower court must be, and it is hereby, affirmed.

ANDERSON, C. J., and POWERS, PARSONS, and HAMILTON, JJ., concur.